# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| WESLEY HOWARD | § | |
| | § | |
| | § | |
| v. | § | CASE NO. 4:15-CV-419 |
| | § | Judge Mazzant |
| WALMART STORES, INC., and WALMART | § | |
| STORES OF TEXAS, LLC | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC's No Evidence Motion for Summary Judgment (Dkt. #31) and Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC's Motion for Summary Judgment (Dkt. #32). After reviewing the relevant pleadings, the Court finds that the motions should be granted in part and denied in part.

## BACKGROUND

On December 24, 2014, Plaintiff Wesley Howard ("Howard"), his wife, and his son were shopping at the Walmart store located in Denison, Texas (Dkt. #32 at p. 1; Dkt. #34 at p. 10; *see* Dkt. #34, Exhibit 1 at 10:11-12:4).[1]  Plaintiff suffers from medical problems and carries a portable oxygen bag with him (Dkt. #34 at p. 10; *see* Dkt. #34, Exhibit 1 at 19:21-20:6).  Due to his medical condition, Plaintiff takes a medication, which causes him to have irritable bowel syndrome ("IBS"), and Plaintiff must occasionally use the restroom immediately (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibkt 1 at 15:10-20).  Plaintiff had to use the restroom during his shopping

---

[1] In their reply brief, Defendants object to the entirety of Plaintiff's Statement of Undisputed Facts as "hearsay, conclusory, lack[ing] foundation, and fail[ing] to cite to an specific evidence in the record, and…contradict[ing] the evidence on record[.]"  (Dkt. #35 at p. 2).  After reviewing the relevant pleadings, the Court finds that Defendants' objections should be overruled at this time.  However, to the extent that the statements are only supported by Exhibit 10, and not elsewhere within the record, the Court will not consider those statements, as Exhibit 10 has been stricken from the record.

trip, however, when he entered the restroom, he asserts that it "was dirty, there was debris all over the floor, and toilets had not been flushed." (Dkt. #34 at p. 11; Dkt. #32 at p. 1; *see* Dkt. #34, Exhibit 1 at 22:8-23:5). Plaintiff asserts that he entered the handicapped stall, where the seat was up, and he hurriedly put the seat down (Dkt. #34 at p. 11; Dkt. #32 at p. 1). He asserts that he also noticed that there were no toilet seat covers available (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibit 1 at 23:1-5). Plaintiff sat down on the toilet (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibit 1 at 23:1-5).

While Plaintiff was in the restroom, he alleges that another customer came in the restroom and, upon noticing that it was dirty, complained and left (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibit 1 at 47:22-49:11). Plaintiff asserts a young man appeared in an orange vest and began to clean the restroom and put toilet seat covers in the dispenser in the stall that Plaintiff was not using (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibit 1 at 49:17-50:23).

When Plaintiff finished using the restroom, he attempted to stand, but could not stand up as he was adhered to the toilet seat (Dkt. #32 at p. 1). Plaintiff's son entered the restroom to check on Plaintiff, because he had been in the restroom for a long time and his son knew that he would be low on oxygen (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibit 1 at 52:24-53:25). At that time, Plaintiff informed his son that there was a problem, and his son left to get a manager (Dkt. #34 at p. 11; *see* Dkt. #34, Exhibit at 52:24-54:2).

When the manager, Robert Ortiz ("Ortiz"), arrived, Plaintiff told him that he was stuck to the toilet seat (Dkt. #34 at p. 12; *see* Dkt. #34, Exhibit 1 at 57:4-58:4). After talking with Plaintiff, Ortiz left and returned with another manager (Dkt. #34 at p. 12; Dkt. #34, Exhibit 2 at 13:12-22). After the managers discussed the issue, they determined that they should call an ambulance (Dkt. #34 at p. 12; Dkt. #34, Exhibit 2 at 14:6-14).

When EMS arrived, they detached the toilet seat from the toilet and carried Plaintiff through the store with the toilet seat still attached to Plaintiff (Dkt. #34 at p. 12; *see* Dkt. #34, Exhibit 1 at 62:12-63:14). Plaintiff asserts that people were laughing at him as EMS wheeled him out of the store (Dkt. #34, Exhibit 1 at 63:11-14).

When Plaintiff arrived in the emergency room ("ER"), the ER doctors removed the toilet seat from Plaintiff, which caused him considerable pain (Dkt. #34, Exhibit 1 at 29:20-24). Plaintiff was sent home from the ER with bandages, burn cream, and a prescription (Dkt. #34 at p. 12). Plaintiff asserts that he received scars from the incident (Dkt. #34 at p. 12; Dkt. #34, Exhibit 5).

On July 6, 2016, Plaintiff filed his Amended Complaint, in which he asserted the following claims against Defendants Walmart Stores, Inc. and Walmart Stores of Texas, LLC (collectively, "Defendants"): (1) premises liability; (2) negligence; (3) gross negligence; (4) intentional infliction of emotional distress; and (5) assault (Dkt. #13). On May 3, 2016, Defendants filed their no evidence motion for summary judgment and their traditional motion for summary judgment (Dkt. #31; Dkt. #32). On May 13, 2016, Plaintiff filed his response (Dkt. #34). On May 19, 2016, Defendants filed their replies (Dkt. #35; Dkt. #36).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

# ANALYSIS

Defendant moves for summary judgment on the following claims: (1) premises liability; (2) negligence; (3) gross negligence; (4) intentional infliction of emotional distress; and (5) assault (Dkt. #31; Dkt. #32). Texas substantive law governs this dispute, since the case is pending before the Court under its diversity jurisdiction. *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 396 (5th Cir. 2013).

As a preliminary matter, Defendants object to several pieces of evidence submitted by Plaintiff. First, Defendants object to Plaintiff's entire Section V "Statement of Disputed Material Facts," as it is hearsay, conclusory, lacks foundation, and fails to cite to any specific evidence in the record (Dkt. #35 at p. 2; Dkt. #36 at p. 2). The Court finds that Defendants' objection should be overruled. Plaintiff's statements are supported by the record before the Court. Additionally, Defendants have not demonstrated which statements it perceives to constitute hearsay statements. Therefore, the Court will overrule this objection.

Defendants also object to Plaintiff's Exhibit 8, as it constitutes inadmissible hearsay and lacks foundation (Dkt. #35 at p. 2; Dkt. #36 at p. 2). The Court finds that the objection should be sustained. Exhibit 8 constitutes a news article, from a third-party blog, detailing several Wal-Mart crime reports in December 2014, in which Plaintiff's incident is included. Although it is likely that the news regarding Plaintiff's incident is relevant, the Court agrees that the article contains impermissible hearsay statements, and thus should be stricken from the record.

Defendants also object to Plaintiff's Exhibit 9, as it constitutes inadmissible hearsay and lacks foundation (Dkt. #35 at p. 2; Dkt. #36 at p. 2). Exhibit 9 consists of a news article titled, "At least 6 Americans have been superglued to Walmart and Home Depot toilet seats since 2003[.]" While it is possible that the material in the article could be relevant, the Court finds that

the news article does contain impermissible hearsay statements, and should be stricken from the record.

Defendants also object to Plaintiff's Exhibit 10, as it constitutes impermissible hearsay, lacks foundation, and fails to meet the requirement of a valid affidavit as it is neither signed nor notarized (Dkt. #35 at p. 2; Dkt. #36 at p. 2). Although Defendants have raised questions as to the validity and admissibility of the declaration, the Court does have a signed copy of Howard's declaration. The Court finds that Defendants' objections as to Howard's declaration should be overruled.

Defendants object to Plaintiff's deposition testimony at page 103, line 23 through page 105, line 1, as it is inadmissible hearsay and lacks foundation (Dkt. #35 at p. 2; Dkt. #36 at p. 2). The Court finds that objection should be sustained as to the alleged statements that the insurance adjuster made to Plaintiff. Therefore, the Court will strike Plaintiff's deposition testimony at page 104, line 8 through line 13, from the record.

Defendants object to Stephanie Howard's deposition testimony at page 32, line 4 through page 33, line 13, as it is inadmissible hearsay and lacks foundation (Dkt. #35 at p. 2; Dkt. #36 at p. 2). The Court finds that the objection is overruled.

*Negligence/Premises Liability*

"The Texas Supreme Court has consistently recognized…that negligent activity claims and premises liability claims involve two independent theories of recovery that fall within the scope of negligence." *Garcia v. Ross Stores, Inc.*, 896 F. Supp. 2d 575, 579 (S.D. Tex. 2012); *see Gen. Elec. Co. v. Mortiz*, 257 S.W.3d 211, 214-15 (Tex. 2008); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); *see also Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 909 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Brooks v. PRH Invs.,*

*Inc.*, 303 S.W.3d 920 (Tex. App.—Texarkana 2010, no pet.). To pursue relief for an injury under negligent activity law, an injury must flow from ongoing, contemporaneous activity rather than a condition created by that activity. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). An injury is the contemporaneous result of a negligent activity where the evidence shows that the activity occurred near both the time and location of the injury. *Kroger Co. v. Persley*, 261 S.W.3d 316, 320 (Tex. App.—Houston [1st Dist.] 2008, no pet.). On the other hand, a cause of action rooted in premises liability arises from property conditions that make it unsafe. *In re Texas Dep't of Transp.*, 218 S.W.3d 74, 77 (Tex. 2007). "If the injury was caused by a condition created by the activity rather than the activity itself, a plaintiff is limited to a premises defect theory of liability." *Garcia*, 896 F. Supp. 2d at 579 (citing *Lucas v. Titus Cty. Hosp. Dist./Titus Mem'l Hosp.*, 964 S.W.2d 144, 153 (Tex. App.—Texarkana 1998, pet. denied)).

In the present case, Plaintiff was injured by a condition created by an activity, not the Defendants' activity itself. The Texas Supreme Court's previous decisions demonstrate that Plaintiff can only recover under a premises liability theory. In *Keetch*, the plaintiff fell thirty minutes after a Kroger employee had sprayed chemicals on plants. 845 S.W.2d at 264. The court noted that "[a]t some point, almost every artificial condition can be said to have been created by an activity," and that the plaintiff "was not injured by the activity of spraying," but "by a condition created by the spraying." *Id.* Likewise, in the present case, Plaintiff was injured by the condition created by placing the super glue on the toilet seat. Therefore, Plaintiff may only recover under a premises liability claim, and the Court will grant Defendants' motion for summary judgment as to Plaintiff's negligence claim.

The elements for a cause of action for premises liability include: (1) the existence of a condition on the premises creating an unreasonable risk of harm; (2) that the premises

owners/occupiers knew, or should have known, of the existence of that condition; (3) that the premises owner/occupier failed to use reasonable care to reduce or eliminate the risk by rectifying or warning of the condition; and (4) that such failure was a proximate cause of the incident and of Plaintiff's injuries. *Keetch*, 845 S.W.2d at 264. Defendants contend that Plaintiff's claim fails for the following reasons: (1) the super glue on the toilet seat does not pose an unreasonable risk of harm; (2) Defendants had no actual or constructive knowledge of the condition; and (3) Defendants did not breach a duty owed to Plaintiff (Dkt. #32 at pp. 5-10; Dkt. #35 at pp. 5-7).

In a premises liability case, "the scope of the duty turns on the plaintiff's status." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). In the present case, Howard was an invitee, and generally, "a property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known." *Id.* (citing *Urena*, 162 S.W.3d at 550; *see Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998)).

After a careful review of the record and the arguments presented, the Court finds that Defendants have not met their burden that there is no material issue of fact entitling them to judgment as a matter of law. Therefore, Plaintiff's premises liability claim will proceed to trial.

*Gross Negligence*

Defendants also assert that the Court should grant summary judgment as to Plaintiff's gross negligence claim (Dkt. #32 at p. 12). "Gross negligence consists of both objective and subjective elements." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012); *see Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001)). "To recover for gross

negligence in Texas, a plaintiff must satisfy the elements of an ordinary negligence or premises liability claim *and* demonstrate clear and convincing evidence of "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191 (5th Cir. 2014) (quoting *State v. Shumake*, 199 S.W.3d 279, 286 (Tex. 2006) (citations omitted)) (emphasis in original). Therefore, to establish a claim for gross negligence, Plaintiff must prove the following: (1) the act or omission, when viewed objectively from Defendants' standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) Defendants had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code § 41.001; *U-Haul Int'l, Inc.*, 380 S.W.3d at 137.

"Under the objective component, 'extreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *U-Haul Int'l, Inc.*, 380 S.W.3d at 137 (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *Harrison*, 70 S.W.3d at 785). "The subjective prong…requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts." *U-Haul Int'l, Inc.*, 380 S.W.3d at 137-38 (citing *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246-47 (Tex. 1999); *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993)).

After reviewing the relevant pleadings, the Court finds that summary judgment should be granted as to Plaintiff's gross negligence claim. In the present case, there is no credible evidence that Defendants knew about the risk that super glue was being placed on their toilet seat.[2] The

---

[2] Plaintiff cites to Exhibit 8 to support his claim of gross negligence (Dkt. #34 at p. 20). The Court has stricken Exhibit 8 from the records, and thus, the Court will not consider it when making its decision.

Court finds that there is no credible evidence demonstrating that Defendants' actions, or lack thereof, rise to the level of gross negligence, and thus, summary judgment should be granted as to Plaintiff's gross negligence claim.

*Intentional Infliction of Emotional Distress*

Defendants assert that the Court should grant summary judgment as to Plaintiff's intentional infliction of emotional distress claim (Dkt. #32 at p. 13). In order to prevail on a claim of intentional infliction of emotional distress, Plaintiff must prove the following: (1) Defendants acted intentionally or recklessly; (2) Defendants' conduct was extreme and outrageous; (3) Defendants' actions caused Plaintiff's emotion distress; and (4) the emotional distress suffered by Plaintiff was severe. *Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

"A person acts with intent if he desires to cause the consequences of his act or believes that the consequences are substantially certain to result from it." *Washington v. Knight*, 887 S.W.2d 211, 216 (Tex. App.—Texarkana 1994, writ denied); *see Twyman v. Twyman*, 855 S.W.2d 619, 630 (Tex. 1993) (Hecht, J., dissenting). "An actor is reckless when he knows or has reason to know of facts which create a high degree of risk of harm to another and deliberately proceeds to act in conscious disregard of, or indifference to, that risk." *Washington*, 887 S.W.2d at 216 (citing *Twyman*, 885 S.W.2d at 624).

Conduct is "extreme and outrageous" only if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Suberu*, 216 S.W.3d at 796 (quoting *Twyman*, 855 S.W.2d at 621). "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities.'"  *Id.* (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).  "It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous."  *Hoffmann-La Roche Inc.*, 144 S.W.3d at 445 (citing *GTE Sw., Inc.*, 998 S.W.2d at 616).  "But when reasonable minds may differ, it is for the jury, subject to the court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability."  *Id.*

"The extreme and outrageous conduct must cause the plaintiff severe emotional distress." *Washington*, 887 S.W.2d at 216.  "Severity of distress is an element of the cause of action, not simply a matter of damages."  *Dupre v. Harris Cty. Hosp. Dist.*, 8 F. Supp. 2d 908, 926 (S.D. Tex. 1998) (quoting *Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex. App.—Corpus Christi 1992, writ denied)); *see K.B. v. N.B.*, 811 S.W.2d 634, 640 (Tex. App.—San Antonio 1991, writ denied), *cert. denied*, 504 U.S. 918 (1992).

"Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, disappointment, anger, worry, and despair."  *Washington*, 887 S.W.2d at 216 (citing *Campos v. Ysleta Gen. Hosp., Inc.*, 836 S.W.2d 791, 795 (Tex. App.—El Paso 1992, writ denied); *see also* Restatement (Second) of Torts § 46 cmt. j (1965).  However, "[t]o be recoverable, the distress must be so severe that no reasonable person could be expected to endure it."  *Washington*, 887 S.W.2d 216 (citing *Motsenbocker v. Potts*, 863 S.W.2d 126, 132 (Tex. App.—Dallas 1993, no writ)).  "The intensity and duration of the distress are factors to be considered in determining [the] severity."  *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001, pet. denied) (citing *Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex. App.—Fort Worth 1994, writ denied)).

"Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Suberu*, 216 S.W.3d at 796; *see Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 n. 1 (Tex. 2005). "But despite the danger of fictitious claims, the difficulty of measuring damages, and the indeterminacy of its proscriptions, intentional infliction of emotional distress can be an effective 'cause of action for egregious conduct that might otherwise go unremedied.'" *Suberu*, 216 S.W.3d at 796 (quoting *Hoffmann-La Roche*, 144 S.W.3d at 447 (quoting *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998))).

In the present case, Defendants assert that Plaintiff has not demonstrated that (1) Defendants' conduct was either intentional or reckless; and (2) Plaintiff suffered severe emotional distress (Dkt. #32 at pp. 13-15). Plaintiff asserts the following claims: (1) Defendants failed to instruct its employees regarding the proper conduct in handling injuries suffered by handicapped customers; (2) Defendants' manager and employees subjected Plaintiff to humiliation and ridicule; (3) Defendants failed and refused to take necessary action to maintain their restroom in a safe and sanitary manner; and (4) Defendants knew their restroom was in a state of disorder and yet did nothing to fix it, and intentionally placed Plaintiff in a perilous position after being put on notice of the restroom condition (Dkt. #13 at ¶ 7.02).

First, the Court finds that there is no evidence demonstrating that Defendants acted intentionally or recklessly. "To establish that the defendant acted intentionally or recklessly, the plaintiff must prove that 'severe emotional distress' was 'the intended consequence or primary risk' of the defendant's actions." *Jones v. Dall. Cty.*, 47 F. Supp. 3d 469, 479 (N.D. Tex. 2014) (quoting *Vaughn v. Drennon*, 372 S.W.3d 726, 732 (Tex. App.—Tyler 2012, no pet. (citing

*Standard Fruit & Vegetable Co.*, 985 S.W.2d at 67)). The evidence shows that the Wal-Mart employees called EMS, who then assessed Plaintiff's situation (Dkt. #34, Exhibit 2 at 13:2-14:7; Dkt. #34, Exhibit 1 at 60:2-63:10). The Court finds that Defendants did not intentionally or recklessly to cause Plaintiff emotional distress through their actions. Instead, the evidence demonstrates that they sought to remedy the situation, and called EMS, who then controlled the situation (Dkt. #34, Exhibit 1 at 64:15-22) ("Q. Okay Did you have any other conversations with anybody from Walmart, from the time you left the bathroom to the time you were loaded into the ambulance? A. Once the EMS showed up, all my dealings was with EMS. Q. Okay. A. They took over.").

The Court also finds that Plaintiff's emotional distress was not severe. In her deposition, Plaintiff's wife, Stephanie Howard, states that, after the incident, Plaintiff was "really depressed and [didn't] want to go [anywhere] because he's tired of being humiliated in public." (Dkt. #34, Exhibit 3 at 32:8-10). She also testified that he was seeing a psychiatrist for his "major depression." (Dkt. #34, Exhibit 3 at 33:1-12). However, based upon the Court's review of the evidence, it appears that Plaintiff began seeing his psychiatrist prior to the incident at Wal-Mart (Dkt. #34, Exhibit 3 at 33:7-9) ("Q: He was diagnosed with depression prior to December of 2014. Is that correct? A: Yes."). Plaintiff was already experiencing and had been diagnosed with depression before the incident at Wal-Mart took place. Additionally, Plaintiff was able to discuss details of the incident with a local news station because he wanted people to know that they should check the toilet seats at Wal-Mart stores because "[s]omebody's going around putting glue on the toilet seats." (Dkt. #34, Exhibit 1 at 67:19-20; *see* Dkt. #34, Exhibit 1 at 66:25-69:17). Plaintiff also testified that when talking with the news station he wasn't embarrassed "[b]ecause [he] was trying to make the public aware." (Dkt. #34, Exhibit 1 at 71:25-

72:4).  The Court finds that Plaintiff's claimed emotional distress was not "so severe that no reasonable person could be expected to endure it."  *Dupre*, 8 F. Supp. 2d at 927 (quoting *Benevides*, 848 S.W.2d at 195).[3]  Therefore, the Court finds that Defendant's motion for summary judgment should be granted, as to Plaintiff's claim for intentional infliction of emotional distress.

*Assault*

Defendants also assert that the Court should grant summary judgment as to Plaintiff's assault claim (Dkt. #32 at p. 16).  "The elements for civil assault mirror those required for criminal assault."  *Umana v. Kroger Tex., L.P.*, 239 S.W.3d 434, 436 (Tex. App.—Dallas 2007, no pet.); *see Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  A person commits assault, if he:  (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when the person knew or reasonably believes that the other will regard the contact as offense or provocative.  *Moore v. City of Wylie*, 319 S.W.3d 778, 782 (Tex. App.—El Paso 2010, no pet.) (citing Tex. Penal Code § 22.01(a)); *Cox v. Waste Mgmt.*, 300 S.W.3d 424, 439 (Tex. App.—Fort Worth 2009, pet. denied).  Plaintiff must prove that Defendants acted intentionally, knowingly, or recklessly to cause Plaintiff's bodily injury.  *In re I.L.*, 389 S.W.3d 445, 455-56 (Tex. App.—El Paso 2012, no pet.).  The Texas Penal Code defines "bodily injury" to mean "physical pain,

---

[3] The Court also finds that Defendants' conduct was not extreme or outrageous.  *See  Hoffmann-La Roche Inc.*, 144 S.W.3d at 445 (citing *GTE Sw., Inc.*, 998 S.W.2d at 616) ("It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous.").  The summary judgment evidence shows that Plaintiff was wheeled out of Wal-Mart in order to take him to the ER.  It appears from the evidence that Defendants were trying to alleviate the situation, and take care of Plaintiff's injuries, to the best of their abilities.  Nothing about Defendants' conduct appears to be the type of activity that the courts would find to be extreme and outrageous.  Therefore, the Court also finds that Defendants' conduct was not extreme or outrageous.

illness, or any impairment of physical condition." *Moore*, 319 S.W.3d at 782 (citing Tex. Penal Code § 1.07(a)(8)).

There is no evidence in the present case that Defendants, or their employees, placed the super glue on the toilet seat. In his deposition testimony, Plaintiff testified that he did not know who put the super glue on the toilet seat (Dkt. #32, Exhibit C at 98:7-25). Additionally, Ortiz testified that Defendants had not had super glue placed on any toilet seats prior to Plaintiff's incident (Dkt. #32, Exhibit D at 12:11-12). Additionally, he testified that he did not know who put the super glue on the toilet seat (Dkt. #32, Exhibit D at 21:11-20). The Court finds that there is no evidence that Defendants caused bodily injury, intentionally, knowingly, or recklessly, to Plaintiff. Therefore, the Court finds that Defendants' motion for summary judgment should be granted as to Plaintiff's assault claim, and the assault claim should be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC's No Evidence Motion for Summary Judgment (Dkt. #31) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC's Motion for Summary Judgment (Dkt. #32) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's claims of (1) negligence; (2) gross negligence; (3) intentional infliction of emotional distress; and (4) assault are hereby **DISMISSED** with prejudice. Plaintiff's premises liability claim will proceed to trial.

**SIGNED this 9th day of August, 2016.**

_AMOS L. MAZZANT_
UNITED STATES DISTRICT JUDGE